SOMERS L. DOUGHTY, complainant,

*v.*

ISABEL DOBBIN, defendant.

[Decided December 1st, 1930.]

*Mr. John C. Reed* and *Mr. Emerson Richards,* for the complainant.

*Messrs. Cole & Cole* and *Mr. Paul M. Salsburg,* for the defendant.

INGERSOLL, V. C.

On or about March 19th, 1927, the Guarantee Trust Company of Atlantic City, New Jersey, conveyed, for an express consideration of $30,000, certain lands and premises in Atlantic City to the complainant, of which $7,500 was paid by Isabel Dobbin and the sum of $7,500 was paid by complainant. On or about March 19th, 1927, the complainant conveyed said lands and premises to the defendant, the step-daughter of complainant. Complainant alleges that he advanced and paid money to the said defendant to the amount of $104,617.24 for the erection of an apartment house structure on said land, and alleges that the agreement between them was that upon the completion of said building, a mortgage would be secured upon said premises for his benefit. He secured a party ready, able and willing to loan the sum of $75,000 upon said premises, but the defendant declined to execute said mortgage.

While the testimony in this case and in the companion

case was taken at one time, in the companion case I found the agreement as alleged by the complainant proven. Such finding was based by reason of two facts, the first upon the fact that she had made mortgages upon the premises in question, from the proceeds of which Doughty was reimbursed a portion of the money so advanced by him, and that she had delivered to Doughty a check for $500 from the bank account of the "Ohio apartments" on the face of which appears "for account of Savoy and Ohio apartments to Somers Doughty—principal."

I am quoting from the opinion in the companion case:

"Mrs. Naame testified as follows:

"The morning that I gave him this check he nagged me and fought with me about Mr. *Doughty* [Naame?] from breakfast time until I finished dressing, followed me from room to room in a terrible temper, I was afraid of my life, and he said if I was a man he would knock me down, then in the heat of anger he said, 'you still owe me money for that furniture.' I said, 'no, I paid you for that furniture.' He said, 'you still owe me money. Can I have a check?' I said, 'well, if that is the way you feel about it, how much do you want?' He said, 'I will take five hundred dollars,' so I was so excited I said, 'come on down stairs.' He followed me down stairs and stood over me while I wrote this check and made me write on there 'Ohio and Savoy apartments to Somers Doughty, principal,' and grabbed the check out of my hands, grabbed out of my hands, and came back later on very much calmed down, and laughed at me, 'now I have got you. I will get everything I ever gave you. I will take it back from you if you marry Joe Naame.' I said, 'I don't see how you can do that.' He said, 'I have got the evidence; you only borrowed my money; that is the evidence I wanted to get and you did it for me.' Several days after that he came to the Ohio apartments and threatened to kill Mr. Naame with the club. The following week he followed me to the Savoy apartments and threatened to kill Mr. Naame again and hit him on the jaw and broke his own knuckles."

Mr. Doughty's explanation of the check is that the check

was made out for $500, $250 on account of the Savoy apartments and $250 on account of the Ohio apartments, which made $500 all in one check, and followed her refusal to execute a mortgage for $75,000 on the property in question as she had on the other property. He gives the circumstances of the check as follows:

"She left it, she give it to the maid to give to me, gave it to the maid and the maid gave it to me after I left her, after I asked her for it. The maid give it to me when I came home and I looked at it and laughed, laid it down on the desk and walked out and left that laying there, such a small amount."

He finally took it and deposited it. In this he is corroborated by the testimony of the maid to whom the check was given by Mrs. Naame to deliver to Doughty.

Mrs. Naame's story is also refuted to some extent by the testimony of the expert on handwriting, who testified that he found the writing to be identical in nervous and muscular characteristics with the other writing of Isabel Dobbin. He found it to be the natural writing of the same party who did the other Isabel Dobbin writings, and to be in no respect abnormal or unusual, to follow in every respect the customary and usual writing habits of this particular person, and showed no signs of excitement at the time it was written. Doughty had this check photographed and the photograph only is offered in evidence, Mrs. Naame being unable to find the original, although it passed through her account in bank and was returned to her.

I am convinced that the testimony of Mrs. Naame does not give the court the benefit of the true facts in so far as this check is concerned, and while the maxim *falsus in unofalsus in omnibus* is not a mandatory rule of evidence (*Addis* v. *Rushmore, 74 N. J. Law 649*), where a defendant's testimony is discredited by documentary proofs and by the contradiction of other and disinterested witnesses in relating facts of which all may have knowledge, her testimony cannot be relied upon when narrating incidents (the truth of which is essential to her defense) which lie solely within her knowledge. *Sinclair* v. *Sinclair, 57 N. J. Eq. 222*. Finding this

testimony of Mrs. Naame's false and considering her demeanor and manner of testifying, I am convinced that her testimony can have but little weight.

Although this case does not have the support of the fact that mortgages were placed upon the property, I am of the opinion that the presumption that the money advanced by Doughty was a gift has been overcome by the evidence with that degree of certainty required in such circumstances. I will advise a decree in accordance with these views.